**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| TERRA JOHNSON, Individually and as next friend and mother of TAMARIO MILLER, a minor,<br><br>    Plaintiff,<br><br>v.<br><br>ADVANCED BIONICS, LLC d/b/a ADVANCED BIONICS CORPORATION and ADVANCED BIONICS HOLDING CORPORATION d/b/a ADVANCED BIONICS CORPORATION and ASTRO SEAL, INC.,<br><br>    Defendants. | No. 2:08-cv-02376-JPM |
| CHRISTINE PURCHASE, Individually and as next friend and mother of CLYCE ("CHASE") PURCHASE-WEATHERLY, a minor,<br><br>    Plaintiff,<br><br>v.<br><br>ADVANCED BIONICS, LLC d/b/a ADVANCED BIONICS CORPORATION and ADVANCED BIONICS HOLDING CORPORATION d/b/a ADVANCED BIONICS CORPORATION and ASTRO SEAL, INC.,<br><br>    Defendants. | No. 2:08-cv-02376-JPM |

**ORDER GRANTING ADVANCED BIONICS' MOTION FOR SEPARATE TRIALS AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO EXCEED PAGE LIMIT AND COMBINE RESPONSE BRIEFS FOR ADVANCED BIONICS' MOTION FOR SUMMARY JUDGMENT**

Pending before the Court is Defendants Advanced Bionics, LLC's and Advanced Bionics Corporation's (collectively "Advanced Bionics") Motion for Separate Trials (Docket Entry ("D.E.") 232[1]), filed March 2, 2011.  Plaintiffs Terra Johnson, individually and as next friend and mother of Tamario Miller, a minor (the "Johnson Plaintiffs"), and Christine Purchase, individually and as next friend and mother of Clyce ("Chase") Purchase-Weatherly, a minor (the "Purchase Plaintiffs") (collectively "Plaintiffs") filed a response in opposition on March 14, 2011. (D.E. 241.)  Advanced Bionics filed a reply in support on March 22, 2011.  (D.E. 245-3.)  For the reasons that follow, Advanced Bionics' motion is GRANTED.

## I. PROCEDURAL BACKGROUND

This products liability case involves two cochlear implants manufactured by Advanced Bionics.  Plaintiffs claim the cochlear implants that Chase Purchase-Weatherly ("Chase") received in June 2004, and that Tamario Miller ("Tamario") received in December 2005, contained a faulty component called a feedthru that allowed moisture to get into the implants, causing failure. (Compl. ("Johnson Compl.")(D.E. 1-1) ¶¶ 1, 127, 131, 138; Compl. ("Purchase Compl.") (Case No. 08-cv-02442, D.E. 1-1) ¶¶ 1, 128, 133, 140.)  The component was made by Astro Seal, Inc. (Johnson

---

[1]  Unless otherwise indicated, the docket entry refers to the docket for Case No. 08-cv-02376.

2

Compl. ¶ 1; Purchase Compl. ¶ 1.)

The Johnson Plaintiffs and the Purchase Plaintiffs instituted separate product liability actions against Advanced Bionics and Astro Seal, Inc. in the Circuit Court of Shelby County, Tennessee on April 5, 2008 and June 5, 2008 respectively.[2] Both cases were removed to this Court on June 9 (Johnson case) and July 9 (Purchase case), 2008. (D.E. 1; Case No. 08-cv-02442, D.E. 1.)

The complaints in both cases assert identical claims against Advanced Bionics: (1) negligence (Count I); (2) strict liability – design and/or manufacturing defect (Count II); (3) strict liability – failure to warn (Count III); (4) negligence per se (Count IV); breach of express warranty (Count V); breach of implied warranty (Count VI); deceptive, unfair, fraudulent, and/or tortious business practices in violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 et seq. (Count VII); negligent infliction of emotional distress (Count VIII); intentional infliction of emotional distress (Count IX); and punitive damages (Count X).[3] (See Johnson Compl. ¶¶ 139-206; Purchase Compl. ¶¶ 151-219.)

---

[2]   Plaintiffs' claims against Astro Seal were dismissed with prejudice on July 14, 2009. (D.E. 127-1; D.E. 128-1.)

[3]   In a status conference held on July 7, 2010, Plaintiffs' counsel indicated that they will not pursue their claims for breach of express warranty (Count V) and negligent infliction of emotional distress (Count VIII). (See Order Following Status Conf. (D.E. 201) 2.)

3

The Court consolidated the two cases pursuant to Federal Rule of Civil Procedure 42(a) on September 18, 2008. (Order of Consolidation (D.E. 44).) Advanced Bionics has now filed the instant motion for separate trials pursuant to Rule 42(b). (Def. Advanced Bionics' Mot. for Separate Trials ("Advanced Bionics' Mot.") (D.E. 232).)

## II. FACTUAL BACKGROUND[4]

### A. HiRes 90K Cochlear Implant Device

Advanced Bionics manufactures cochlear implants, implantable medical devices that allow deaf persons to hear. (Def. Advanced Bionics' Mem. in Supp. of Mot. for Separate Trials ("Advanced Bionics' Mem.") (D.E. 232-1) 4.) Over the course of its existence, Advanced Bionics has manufactured three generations of cochlear implants: the C1.2, the CII, and the HiRes 90k. (Pls. Resp. 2.) Both Tamario and Chase received HiRes 90k devices. (Id.)

In order to function properly, a cochlear implant device must remain hermetic, i.e., waterproof. (Id.) An ingress of moisture can cause a device to fail. (Purchase Compl. ¶¶ 14-15.) Thus, to avoid device failure, it is important that a cochlear implant not allow significant moisture in or toxic compounds (if such compounds are present in the implant) out.

---

[4]  The Court relies on the facts as stated in the parties' pleadings and filings as to this motion.

4

(Id. ¶ 18; Answer of Advanced Bionics to Purchase Compl. (Case No. 08-2442, D.E. 28) ¶ 18.)

**B. Purchase Plaintiffs**

At the age of 12 months, Chase Purchase-Weatherly sustained profound hearing loss. (Purchase Compl. ¶ 125.) Though he was fitted with hearing aids at 18 months, his hearing continued to decline. (Id. ¶ 126.)

Chase had a HiRes 90K device (the "Purchase device") implanted on July 28, 2004 when he was 7 years old. (Purchase Compl. ¶¶ 6, 128; Advanced Bionics' Mem. 2.) Advanced Bionics completed manufacture of the Purchase Device on or about May 28, 2004. (Advanced Bionics' Mem. 2.) The Purchase device failed prematurely in or around June 2005, and on June 29, 2005, Chase underwent explant surgery. (Purchase Compl. ¶¶ 132-33, 135; Failure Analysis Report No. 20084682 ("Purchase Failure Analysis Report") (D.E. 232-3) 1.)

After the Purchase device was explanted, it was returned to Advanced Bionics for testing. (Purchase Compl. ¶ 138.) The Failure Analysis Report of the Purchase device indicated that it failed due to high moisture. (Purchase Failure Analysis Report 3.) A "residual gas analysis" or "RGA" test, which analyzes the gases in the implant after it is removed, showed that there was 61.3379 % water/vapor inside the device case, which exceeded the RGA test limit of 0.5%. (Purchase RGA Testing Report (D.E. 232-

3) 4.) The report noted: "Although an assessment of the RGA data suggests that the device was non-hermetic, dye penetrant testing did not reveal the source of the leak." (Purchase Failure Analysis Report 3.)

### C. Johnson Plaintiffs

At the age of 5 months, Tamario Miller was confirmed to have profound hearing loss. (Johnson Compl. ¶ 125.) Though he was fitted with hearing aids, his hearing continued to decline. (Id.)

Tamario had a HiRes 90K device (the "Miller device") implanted on December 12, 2005 when he was not yet 2 years old. (Johnson Compl. ¶¶ 6, 127.) Advanced Bionics completed manufacture of the Miller device on or about September 13, 2005. (Advanced Bionics' Mem. 2.) The Miller device failed prematurely in or around May 2007, and on August 13, 2007, Tamario underwent explant surgery. (Johnson Compl. ¶¶ 131, 133; Failure Analysis Report No. 20146408 ("Miller Failure Analysis Report") (D.E. 232-4) 1.)

After the Miller device was explanted, it was returned to Advanced Bionics for testing. (Johnson Compl. ¶ 135.) The Failure Analysis Report of the Miller device indicated that it failed due to high moisture and identified the "source of the problem" as a "feedthru hermeticity issue from one feedthru vendor." (Miller Failure Analysis Report 3.) The RGA test

6

showed that there was 26.983 % water/vapor inside the device case, which exceeded the RGA test limit of 0.5%. (Miller RGA Testing Report (D.E. 232-3) 4.)

**III. STANDARD**

Rule 42(b) of the Federal Rules of Civil Procedure authorizes the Court to order separate trials "[f]or convenience, to avoid prejudice, or to expedite or economize . . . ."  Fed. R. Civ. P. 42(b).  The decision to order separate trials lies within the sound discretion of the district court. Saxion v. Titan-C Manu., 86 F.3d 553, 556 (6th Cir. 1996).  "In determining whether separate trials are appropriate, the court should consider several facts, including 'the potential prejudice to the parties, the possible confusion of the jurors, and the resulting convenience and economy.'"  Wilson v. Morgan, 477 F.3d 326, 339 (6th Cir. 2007) (citing Martin v. Heideman, 106 F.3d 1308, 1311 (6th Cir. 1997).  "Only one of these criteria need be met to justify separation."  Saxion, 86 F.3d at 556.  "The principal purpose of the rule is to enable the trial judge to dispose of a case in a way that both advances judicial efficiency and is fair to the parties."  In re Bendectin Litigation, 857 F.2d 290, 307 (6th Cir. 1988) (citation omitted).

**IV. ANALYSIS**

Advanced Bionics contends that separate trials of the Johnson Plaintiffs' claims and the Purchase Plaintiffs' claims are warranted because different evidence may be admissible in each case and different theories of liability and damages will be involved. (Id. at 7.) Though it admits that there are common questions of fact and law between the two cases, Advanced Bionics asserts that it is the "differences between the cases that make trying them together unfairly prejudicial to Defendant." (Def. Advanced Bionics' Reply in Supp. of Mot. for Separate Trials ("Advanced Bionics' Reply") (D.E. 247) 1.) Advanced Bionics argues that a cumulative presentation of the evidence in a joint trial will result in jury confusion and unfair prejudice to Advanced Bionics. (Id.)

Plaintiffs oppose Advanced Bionics' motion. (Pls.' Resp. to Advanced Bionics' Mot. for Separate Trials ("Pls.' Resp.") (D.E. 241).) They argue that there are a host of common questions of fact and law between the two sets of Plaintiffs and that a single trial to dispose of all the claims will best conserve judicial resources. (Id. at 1.) Plaintiffs further argue that Advanced Bionics cannot demonstrate that it would suffer actual prejudice if the claims were tried together.[5] (Id.)

---

[5] In support of their position, Plaintiffs point to a consolidated trial proceeding in the Los Angeles Superior Court in which the plaintiffs are two adults who received cochlear implants from Advanced Bionics. (Pls.' Resp.

8

### A. Potential Prejudice and Confusion

Advanced Bionics raises three arguments in support of its assertion that a joint trial would result in confusion of the issues and unfair prejudice: (1) each case will involve different evidence related to different alleged device failures; (2) evidence admissible in the Johnson case will be inadmissible in the Purchase case; and (3) the alleged damages suffered by Tamario differ substantially from those suffered by Chase. (Advanced Bionics' Mem. 7-12.)  Advanced Bionics asserts that these factual differences warrant separate trials.

#### 1. Differences in Alleged Device Failures

Advanced Bionics alleges that these cases involve different alleged device failures.  (Id. at 7-8.)  Though it admits that each device was found to have failed because moisture leaked into it, Advanced Bionics asserts that "the kind of leak and the cause is not the same." (Advanced Bionics' Reply 2.)  According to Advanced Bionics, the Purchase device showed evidence of a "traditional leak" whereby outside air, composed mostly of nitrogen and oxygen, and moisture leaked in and the sealed-in gases leaked out.  (Advanced Bionics' Mem. 7-8.)  By contrast,

---

15.) Whether a case should be tried in a consolidated format is a determination that must be made on a "case-by-case [basis] depending on the facts in the individual case." State of Ohio v. Louis Trauth Dairy, Inc., 163 F.R.D. 500, 503 (S.D. Ohio 1995)(citing In re Bendectin Litigation, 857 F.2d at 307).  Thus, the existence of a consolidated case in California is irrelevant to the Court's analysis of whether the cases before it should be tried jointly.

Advanced Bionics states that the Miller device "had the unique signature of an Astro Seal leak." (Advanced Bionics' Reply 2.) Advanced Bionics avers that the failure analysis of the Miller device revealed "an unusual and virtually undetectable leak in the Astro Seal feedthru that allowed moisture to enter but which did not allow outside gases to enter." (Advanced Bionics' Mem. 8.) Advanced Bionics emphasizes that "[t]raditional failure analysis testing did not show evidence of a leak in [the Miller] device." (Id. (citing Miller Failure Analysis Report).)

Plaintiffs counter that both "devices failed because of moisture intrusion into the device through the Astro Seal feedthru." (Pls.' Resp. 10.) In spite of Advanced Bionics' statements to the contrary, Plaintiffs devote a substantial portion of their response explaining to the Court that there is no dispute on this issue. (Id. at 7-8, 10-11, 12-13.) Plaintiffs insist that, in both cases, "[t]he medical device is the same[,] [t]he component is the same[,] [and] [t]he failure mode is the same." (Id. at 10.)

Despite Plaintiffs' assertions to the contrary, the cause of the Purchase device's failure is disputed. This dispute alone demonstrates the necessity for separate trials because it directly bears on Advanced Bionics' liability. The liability issue to be tried in the Purchase case will focus first on the source of the leak that led to the moisture ingress into the

10

Purchase Device and its subsequent failure. In the Johnson Case, however, the source of the leak is a non-issue; Advanced Bionics admits that an Astro Seal leak led to the moisture ingress into the Miller device. A joint trial would conflate this evidence, risk confusion of the liability issue, and invite the jury to conclude that Advanced Bionics' admission as to Miller's device applies equally to Purchase's device. Given this disputed evidence over a key issue, there is a significant risk that Advanced Bionics would be prejudiced by a joint trial.

**2. Differences in Admissible and/or Relevant Evidence**

Advanced Bionics argues that a joint trial would lead to confusion of the issues and result in prejudice because admissible evidence related to Advanced Bionics' actions and alleged knowledge before the time of implantation will vary significantly between the two cases. (Advanced Bionics' Mem. 9.) Advanced Bionics points to the fact that Tamario received his implant more than 17 months after Chase received his. (Id. at 9-10.) Plaintiffs contend that, despite the time between the implantation dates, there is a substantial amount of overlap in evidence between the two cases, including the same exhibits, the same experts, and over twenty of the same witnesses. (Id. at 9, 11.)

Though there is some overlap in the evidence, a substantial amount of evidence admissible in the Johnson Plaintiffs' case

11

will be inadmissible in the Purchase Plaintiffs' case. Most, if not all, of the evidence related to events occurring during the seventeen months after Chase received his implant, but before Tamario receive his, may be inadmissible in the Purchase case under the Federal Rules of Evidence. The Court agrees with Advanced Bionics that if these cases are tried together, the Court would be limited in its ability to exclude such evidence and would likely be forced to admit evidence that it would otherwise exclude. This in turn would obligate the Court to provide a limiting instruction to the jury on the use of such evidence.[6] Given the substantial amount of evidence expected to be presented, a joint trial would make it extremely difficult for the jury to keep each set of Plaintiffs' claims separate. A cumulative presentation of the evidence would risk that the jury would "resolve the confusion by considering all the testimony to pertain to all the claims, despite any limiting instructions."

---

[6] Plaintiffs argue that any potential prejudice to Advanced Bionics can be alleviated with an appropriate instruction to the jury. (Pls.' Resp. 14.) The Court is not persuaded. Based on the parties' submissions, it is evident that a substantial amount of testimonial and documentary evidence will be presented at trial. The evidence will include opinion testimony relating to a complex medical device and the federal regulations that apply to it. Given these complicated matters and the substantial amount of evidence the jury will be obligated to consider, the risk that the jury will misapply some evidence despite a limiting instruction is too great to ignore. Cf. Henderson, 918 F. Supp. at 1063-64; Moorehouse v. Boeing Co., 501 F. Supp. 390, 393 n.4 (E.D. Pa. 1980) (noting that "even the strongest jury instructions could not have dulled the impact of a parade of witnesses"). But see Louis Trauth Dairy, Inc., 163 F.R.D. at 504 (reasoning that separate trials "will not make the evaluation of the evidence any less complex" where two juries "would have to sift through the expert testimony rather than one").

Henderson v. AT&T Corp., 918 F. Supp. 1059, 1063 (S.D. Tex. 1996).

Plaintiffs also assert that the time between the implant dates, and the effect of those dates on the admissibility of evidence, is irrelevant. (Pls.' Resp. 1, 13.) Plaintiffs argue that Advanced Bionics' defense—i.e., that it could not have discovered the Astro Seal feedthru leak phenomenon prior to 2006—makes the implant dates a "non-issue for 'prejudice.'" (Pls.' Resp. 1, 13.) However, if the proof shows that the Astro Seal feedthru was not the source of the leak in the Purchase Device, then all the evidence related to the Astro Seal issue is neither relevant nor admissible in the Purchase Plaintiffs' case. Likewise, when Advanced Bionics discovered or should have discovered the Astro Seal feedthru issue would be irrelevant in the Purchase case. The presentation of this evidence would, therefore, confuse the issues and risk prejudicing Advanced Bionics in a joint trial.

### 3. Differences in Alleged Damages

Advanced Bionics asserts that the alleged damages, and the proof of those damages, differs substantially between the Purchase Plaintiffs' claims and the Johnson Plaintiffs' claims. (Advanced Bionics' Mem. 11-12.) Advanced Bionics argues that it will suffer unfair prejudice by a cumulative presentation of the evidence relating to each child's damages. (Id.) Plaintiffs

13

take issue with Advanced Bionics' argument, especially as it relates to Tamario's progress since his device was replaced. (Pls.' Resp. 13-14.)  Plaintiffs argue that the differences in the alleged damages between Chase and Tamario are irrelevant. (Id.)

According to Advanced Bionics' motion, since his device was replaced, Chase "regained his hearing right away and has been in mainstream classes, communicates orally with ease, and is on the honor roll." (Id. at 11-12.)  Chase is now 14 years old, and, according to Advanced Bionics, Chase's audiologist and teachers believe that "there is nothing he cannot do if he sets his mind to it." (Id. at 12.)

By comparison, Advanced Bionics avers that Tamario's "speech and language [were] seriously delayed long before the device failure, and . . . continued to be delayed after replacement." (Id.)  Advanced Bionics states that Tamario is now almost 7 years old and "is well behind . . . his hearing peers in academic progress . . . ."[7] (Id.)

If the alleged damages suffered by each child were the only differences between the two cases, the Court would not be inclined to order separate trials.  However, taken together with

---

[7] Though Plaintiffs take issue with Advanced Bionics' argument regarding the different damages suffered by Chase and Tamario, their response does not dispute Advanced Bionics' factual characterization of Tamario's progress since his device was replaced. (See Pls.' Resp. 13-14.)

14

the other differences already noted, there is a risk that this evidence will confuse the issues and prejudice Advanced Bionics. Chase's claims appear to involve less complicated damages issues because of his age, his significant recovery, and his present ability to communicate.  On the other hand, Tamario's claims appear to involve more complicated damages issues because of his young age at the time of implantation and device failure, his present issues with communicating, and the alleged permanent adverse affects from his device's failure.[8]  Given the differences, potentially great, between Chase's damages and Tamario's damages, there is a risk that a jury would be unduly influenced by the facts of one case and respond in both cases accordingly.

### B. Relative Convenience and Economy

Plaintiffs correctly point out that a joint trial will conserve judicial resources and avoid duplication of time and efforts. (Pls.' Resp. 15-16.)  However, the Court finds that the risk of confusion and prejudice to Advanced Bionics outweighs the judicial economy and expense saved by a joint trial.  While "[c]onservation of judicial resources is a laudable goal," the Sixth Circuit has cautioned that "[c]are must be taken that consolidation does not result in unavoidable

---

[8]     The Court is not making a determination regarding the relative merits of the Plaintiffs' damages claims.

15

prejudice or unfair advantage." Cantrell v. GAF Corp., 999 F.2d 1007, 1011 (6th Cir. 1993). Moreover, the savings to the judicial system of a joint trial would be diminished because of the substantially different evidence related to device failure and defect, causation, and damages that will be presented in each case.

Though consolidation for purposes of discovery and pretrial matters was an efficient use of resources, separate trials are necessary to prevent prejudice to Advanced Bionics.[9] Moreover, separate trials would permit the Court more flexibility in excluding inadmissible or irrelevant evidence, thus alleviating the risk that the jury will confuse the evidence affecting Advance Bionics' liability in each case. The interests of justice are best advanced by conducting two separate trials in this matter.

**C. Severance**

Furthermore, the Court finds that severance of the two cases is appropriate.

Rule 21 of the Federal Rules of Civil Procedure grants the Court broad discretion to "sever any claim against a party," and order that the claims proceed separately. Fed. R. Civ. P. 21.

---

[9] The Court's intention at the time of consolidation was to consolidate these cases only for purposes of discovery. (See Minute Entry for Sept. 12, 2008 Telephonic Hearing (D.E. 43) ("This case will be consolidated with 08-2442 for purposes of discovery.").)

16

"[T]he permissive language of Rule 21 permits the district court broad discretion in determining whether or not actions should be severed." Alvion Properties, Inc. v. Weber, No. 3:08-0866, 2009 WL 3060419, at *8 (M.D. Tenn. Sept. 23, 2009) (citing Payne v. Corrections Corp. of Am., 194 F.3d 1313, 1999 WL 970295, at *1 (6th Cir. 1999)). "[T]he propriety of severance under this rule usually arises in the context of misjoinder of parties, which is not at issue here."[10] Id. However, the rule "authorizes the severance of any claim, even without a finding of improper joinder, where there are sufficient other reasons for ordering a severance." Wyndham Assocs. v. Bintliff, 398 F.2d 614, 618 (2nd Cir. 1968) (citations omitted); Spencer, White & Prentis, Inc., 498 F.2d at 361 (noting that "justification for severance is not confined to misjoinder of parties"). Outside the context of misjoinder, Rule 21 severance may also be called for to prevent juror confusion and undue prejudice to the parties. America's Collectibles Network, Inc. v. Chase Paymentech Solutions, LLC, No. 3:07-CV-278, 2008 WL 4546251, at *5 (E.D. Tenn. Sept. 24, 2008); see also Weathers v. Bi-Lo, LLC, No. 3:04-CV-367, 2006 WL 435725, at *12 (E.D. Tenn. Feb. 22, 2006) (finding that "it would be unwieldy as a practical matter and prejudicial to [the

---

[10] The Court will assume for purposes of this motion that the Plaintiffs satisfy the joinder requirements of Rule 20. However, the fact that Plaintiffs are properly joined does not end the severance inquiry. Spencer, White & Prentis, Inc. v. Pfizer Inc., 498 F.2d 358, 361 (3d Cir. 1974) (noting that "justification for severance is not confined to misjoinder of parties").

17

defendants] to try all of [the] claims together to a jury" and holding that plaintiff's claims should be served for purposes of trial, but not for purposes of discovery). Thus, the same considerations that weigh in favor of separate trials pursuant to Rule 42(b) may also be used to justify severance of two parties' claims into independent actions pursuant to Rule 20.[11] AG Equip. Co. v. AIG Life Ins. Co., No. 07-CV-0556-CVE-PJC, 2009 WL 236019, at *1 (N.D. Okla. Jan. 29, 2009) ("Although Rule 21 is procedurally distinct from Rule 42(b), a decision to sever claims or issues under Rule 21 is discretionary and the Court will apply the same standard of review that it would to a request for separate trials under Rule 42(b).") (citation omitted).

For the same reasons that separate trials are warranted, severance of the Purchase Plaintiffs' claims from the Johnson Plaintiffs' claims is warranted. Though consolidation of these cases served the purpose of economy in case administration, it did not merge the suits into a single action. Mitchell v. Dutton, 865 F.2d 1268, 1989 WL 933, at *3 (6th Cir. 1989) ("At

---

[11] Parties often confuse a motion to sever pursuant to Rule 21 with a motion for a separate trial pursuant to Rule 42(b). Louis Trauth Dairy, Inc., 163 F.R.D. at 503. "If a claim is severed under Rule 21, it proceeds as a 'discrete, independent action and the trial court may render final, appealable judgment on the severed claim, notwithstanding the continued existence of unresolved claims in the remaining action.'" AG Equip. Co., 2009 WL 236019, at *1 (quoting E.S. v. Indep. Sch. Dist., No. 196 Rosemount-Apple Valley, 135 F.3d 566, 568 (8th Cir. 1998)). However, "[w]here a court orders separate trials [pursuant to Rule 41(b)], claims will be tried separately but remain part of the same suit." Adcock v. City of Memphis, No. 06-2109-STA, 2010 WL 5090440, at *1 (W.D. Tenn. Dec. 8, 2010).

the time of consolidation, the suits retained their separate identities, and plaintiffs were therefore not deprived of any substantial rights.") (citations omitted).  Thus, each set of Plaintiffs is required, regardless of whether or not their cases are tried together, to prove their own allegations.  These cases were filed separately and may proceed to a final disposition separately and independently of each other.

## V. CONCLUSION

For the above reasons, Advanced Bionics' Motion for Separate Trials is GRANTED.

IT IS THEREFORE ORDERED that:

(1) The Purchase Plaintiffs' claims shall be tried separately from the Johnson Plaintiffs' claims.

(2) The Purchase Plaintiffs' claims shall be severed from Johnson Plaintiffs' claims and each case shall proceed to final judgment independent of the other.

(3) To allow the Court sufficient time to address Advanced Bionics' pending motions for summary judgment, new trial dates shall be set in both cases.  The Purchase case shall be tried first.

(4) The parties shall file all further documents relating to the Purchase Plaintiffs' claims under Case No. 08-cv-02442.  The parties shall file all further documents relating to the Johnson Plaintiffs' claims under Case No. 08-cv-02376.  When filing any matter using the Court's CM/ECF system, the parties are directed

to select "No" in response to the CM/ECF prompt "Do you want to spread this docket entry?".

(5) The Clerk of Court is instructed that Case No. 08-cv-02442 and Case No. 08-cv-02376 shall remain associated in the Court's CM/ECF system for the purpose of preserving the records for appeal.

(6) The Clerk of Court is directed to terminate Advanced Bionics' Motion for Summary Judgment in Purchase, D.E. 237, in Case No. 08-cv-2376.

(7) Advanced Bionics shall re-file its Motion for Summary Judgment in Purchase under Case No. 08-cv-2442.

(8) Plaintiffs' Motion to Exceed Page Limit and Combine Response Briefs for Advanced Bionics' Motion for Summary Judgment (D.E. 248) is GRANTED in PART and DENIED in PART. Plaintiffs shall be permitted to file response briefs of up to forty (40) pages.  In light of this Order, however, Plaintiffs shall not be permitted to file one consolidated response to Defendant's motions.  The Purchase Plaintiffs shall file their response under Case No. 08-cv-2442 once Advanced Bionics has re-filed its Motion for Summary Judgment in Purchase under Case No. 08-cv-2442.

**IT IS SO ORDERED,** this 4th day of April, 2011.

/s/ JON PHIPPS McCALLA
CHIEF UNITED STATES DISTRICT JUDGE